UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENDRA C.,[1]

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

<u>DECISION & ORDER</u>

21-CV-1131MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Kendra C. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income ("DIB/SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 9).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 6, 7).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1]  Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and
plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's
determination is supported by substantial evidence in the record and whether the Commissioner
applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)
("[i]n reviewing a final decision of the Commissioner, a district court must determine whether
the correct legal standards were applied and whether substantial evidence supports the
decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also
Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*
whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's
conclusions are supported by substantial evidence in the record as a whole or are based on an
erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C.
§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits
is directed to accept the Commissioner's findings of fact unless they are not supported by
"substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to
any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is
defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401
(1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4)     if not, whether despite the claimant's severe impairments,
        the claimant retains the residual functional capacity
        [("RFC")] to perform [his or her] past work; and

(5)     if not, whether the claimant retains the [RFC] to perform
        any other work that exists in significant numbers in the
        national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.     <u>Procedural History</u>

            Plaintiff filed for DIB/SSI on October 18, 2016, alleging disability beginning on

August 18, 2016.  (Tr. 207, 238).[2]  Those applications were denied by an ALJ on July 30, 2019

(the "2019 Decision").  (Tr. 12-26).  On appeal, the Hon. David G. Larimer, United States

District Judge for the Western District of New York, issued a Decision and Order (the "District

Court Decision") remanding the matter on the grounds that the 2019 Decision was not supported

by substantial evidence, and a judgment remanding the action was issued on November 18, 2020.

(Tr. 1221-27).  In the District Court Decision, Judge Larimer determined that the ALJ erred by

rejecting the medical opinions of record concerning her physical impairments and formulating an

RFC based upon his own lay opinion.  (*Id.*).  Accordingly, Judge Larimer determined that

remand was warranted in order to permit the ALJ to develop the record by requesting medical

---

[2]  The administrative transcript (Docket ## 4, 5) shall be referred to as "Tr. ___," and references thereto
utilize the internal Bates-stamped pagination assigned by the parties.

opinions from plaintiff's treating physicians or ordering a consultative examination of plaintiff's physical impairments. (*Id.*).

On December 22, 2020, the Appeals Council entered an order remanding the case to the ALJ and directing the ALJ to conduct further proceedings consistent with the District Court Decision. (Tr. 1230). On June 30, 2021, after further developing the record and conducting an additional hearing, a different ALJ concluded that plaintiff was not disabled (the "2021 Decision"). (Tr. 1126-41). Plaintiff commenced this lawsuit on October 18, 2021. (Docket # 1).

### III.   **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 18, 2016, the alleged onset date. (Tr. 1126-41). At step two, the ALJ concluded that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with disc herniation and stenosis; degenerative disc disease of the cervical spine with radiculopathy; degenerative disc disease of the thoracic spine with radiculopathy; and, obesity. (*Id.*). The ALJ found that plaintiff suffered from several other medically determinable physical impairments that were nonsevere. (*Id.*).

With respect to plaintiff's mental impairments, the ALJ found that plaintiff suffered from the medically determinable impairments of anxiety disorder, mild panic disorder, and major depressive disorder, but that those impairments were nonsevere. (*Id.*). In making this finding, the ALJ considered the four broad categories of mental functioning. (*Id.*). Specifically, the ALJ determined that plaintiff had mild limitations in her ability to interact with others and no

limitations in her ability to understand, remember, or apply information; concentrate, persist, or maintain pace; and, adapt or manage herself. (*Id.*).

At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*). The ALJ concluded that plaintiff retained the RFC to engage in light work with certain limitations. (*Id.*). Specifically, plaintiff was able to lift, carry, push and pull no more than 20 pounds and could occasionally bend, stoop, and twist. (*Id.*). The ALJ further found that plaintiff could sit for a continuous period of up to 60 minutes, but then must be provided approximately five minutes of standing activity before resuming seated activity. (*Id.*). At steps four and five, the ALJ found that plaintiff was unable to perform her past relevant work, but that other jobs existed in significant numbers in the national economy that, based on her age, education, work experience, and RFC, plaintiff could perform, such as mail sorter, inspector packer, and sealing machine operator. (*Id.*). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

## IV.   **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 6-1, 8). First, plaintiff maintains that the physical portion of the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly weighed the medical opinions of record and failed to obtain a retrospective medical opinion of plaintiff's physical functioning prior to June 2019. (Docket ## 6-1 at 13-24; 8 at 1-6). Next, plaintiff argues that the ALJ improperly failed to consider the limiting effects of her nonsevere mental impairments in formulating the RFC.

6

(Docket ## 6-1 at 24-26; 8 at 6-9).  Finally, plaintiff maintains that the ALJ placed undue emphasis on her activities of daily living in evaluating her subjective complaints.  (Docket # 6-1 at 26-28).

## V.    <u>Analysis</u>

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

### A.    <u>The ALJ's Physical RFC Assessment</u>

I turn first to the plaintiff's challenge to the ALJ's physical RFC assessment.  As stated above, plaintiff maintains that the physical RFC formulated by the ALJ is unsupported by substantial evidence because the ALJ improperly weighed the medical opinion evidence and failed to fully develop the record regarding her physical impairments.

1.      **The Weight Accorded to the Medical Opinions of Record**

In formulating the physical RFC, the ALJ considered and evaluated several medical opinions regarding plaintiff's physical functional capacity.  (Tr. 1137-39).  According to the ALJ, the medical records provided by plaintiff's treating physician Michael D. Calabrese, MD, of Medical Care of Western New York, and plaintiff's orthopedic surgeon Cameron B. Huckell, MD, of Pinnacle Orthopedic & Spine Specialists, contained "multiple opinions on the ultimate issue of disability, which is reserved to the "[C]ommissioner."  (Tr. 1138).  In addition, the ALJ also found that statements contained in those records, including observations that plaintiff was unable to work or was temporarily totally impaired, or assessments providing a percentage rating of plaintiff's disability, were vague, conclusory, not expressed in vocationally relevant terms, and devoid of functional analysis.  (*Id.*).  By contrast, the ALJ found that the longitudinal treatment records, including more recent statements and opinions assessing specific functional limitations, were more probative and consistent with the observations recorded in plaintiff's treatment records.  (*Id.*).  Accordingly, the ALJ determined that the earlier statements – specifically those made in December 2015, January 2016, August 2016, and September 2016, prior to plaintiff's November 2016 lumbar fusion surgery – were entitled to "little weight."  (*Id.*).

The ALJ also considered opinions authored by Huckell in June 2019 and January 2020.  (Tr. 1137-38).  During an office visit with Huckell on June 10, 2019, Huckell opined that plaintiff was permanently partially disabled following a motor vehicle accident in August 2015 and a subsequent surgery in November 2016.  (Tr. 1110).  Huckell opined that plaintiff could perform a "light duty position" which would not require her to lift more than 20-30 pounds on a frequent basis.  (*Id.*).

During an office visit on June 26, 2019, plaintiff reported that she would like to return to work. (Tr. 1114-21). Huckell's treatment notes indicate that plaintiff worked as a certified medical assistant ("CMA"), a job which required her to stand, bend, lift, twist, and perform patient care. (*Id.*). Huckell agreed that plaintiff could return to work with restrictions. (*Id.*). Specifically, he concluded that she could perform "light duty" work, but that she should avoid lifting more than 15 pounds and any repetitive bending, twisting, or rotation of her lumbar spine. (*Id.*). In addition, Huckell opined that plaintiff should be permitted to "stand up and take a short break after 30 minutes," and that she should ease into work by starting with eight-hour shifts two days per week. (*Id.*). That same day, Krystle M. Collins, FNP-BC, a nurse practitioner with Huckell's office, completed a "Certificate for Work" for plaintiff reflecting the same restrictions. (Tr. 1113).

Plaintiff returned for an office visit with Huckell on January 8, 2020, and continued to report that she would like to return to work. (Tr. 1387-93). Again, Huckell's treatment notes indicate that plaintiff worked as a CMA, a job which required her to stand, bend, lift, twist, and perform patient care. (*Id.*). Huckell agreed that plaintiff could return to work with restrictions. (*Id.*). Specifically, he concluded that she could perform "light duty" work, but that she should avoid lifting more than 20 pounds and any repetitive forward bending, twisting, or rotation of her lumbar spine. (*Id.*). In addition, Huckell opined that plaintiff should be permitted to "stand up and take a short break after 60 minutes." (*Id.*). Huckell maintained the same opinion concerning plaintiff's restrictions during subsequent visits. (Tr. 1419-34).

The ALJ determined that Huckell's January 2020 opinion was entitled to controlling weight. (Tr. 1137-38). According to the ALJ, Huckell had a long, established history of treating plaintiff, had performed numerous physical examinations of plaintiff, and had

9

access to plaintiff's objective medical findings.  (*Id.*).  Moreover, the ALJ found the limitations assessed by Huckell to be consistent with Huckell's objective examination findings demonstrating "normal gait, intact strength, negative straight leg raise testing, [and] good balance and coordination."  (Tr. 1137).  With respect to Huckell's June 26, 2019 opinion assessing a slightly more restrictive lifting limitation, the ALJ determined that it was inconsistent with Huckell's opinions both prior to and after that date and suggested, at most, a brief exacerbation of plaintiff's condition.  (Tr. 1137-38).

The ALJ also considered prior opinions by Huckell that plaintiff was permanently partially disabled.  (Tr. 1137).  According to the ALJ, beginning in December 2017 and continuing through June 2019, Huckell opined that plaintiff was permanently partially disabled.  (*Id.*).  Prior to that time (but after the alleged onset date), Huckell's treatment notes reflected his opinion that plaintiff either was temporarily unable to return to work or temporarily disabled.  (Tr. 898-912, 954-63, 970-1001).

Although the ALJ acknowledged that Huckell's statements concerning plaintiff's partial disability failed to opine on plaintiff's specific degree of functional ability, he found the statements demonstrated that Huckell had determined that plaintiff's condition had improved since her surgery and that he believed that plaintiff could engage in some type of work activity.  (*Id.*).  According to the ALJ, beginning in September 2017 and continuing through April 2021, Huckell's physical examinations of plaintiff documented essentially normal findings with "minimal deviation."  (*Id.*).  The ALJ concluded that because Huckell's physical examination findings were consistent throughout the period September 2017 through present, it was reasonable to infer that plaintiff was capable of work activity throughout that period.  (*Id.*).  Although the ALJ acknowledged that plaintiff was totally incapacitated for a period of time

following her November 2016 lumbar fusion surgery, he found that her incapacitation was not of a "durational" length.  (*Id.*).

Finally, the ALJ considered an opinion rendered by state consultative examining physician Susan Dantoni, MD.  (Tr. 1138-39).  On May 15, 2021, Dantoni conducted an orthopedic evaluation of plaintiff.  (Tr. 1460-71).  Plaintiff reported that she suffered from back and neck pain following a motor vehicle accident in 2015 and that she occasionally used a cane and back brace when she had to be on her feet for an extended period of time.  (*Id.*).  Plaintiff reported that she was able to care for her personal hygiene and cooked daily but needed assistance with household chores.  (*Id.*).  Upon examination, plaintiff appeared uncomfortable and alternated positions between sitting and standing.  (*Id.*).  Her gait and station were normal, but she was unable to perform the heel/toe walk or squat.  (*Id.*).  She did not use an assistive device and did not need assistance to change for the examination, but she had difficulty rising from the chair and needed assistance to get on and off the examination table.  (*Id.*).

Upon examination, plaintiff demonstrated limited range of motion in her cervical spine with discomfort in her neck.  (*Id.*).  She had difficulty raising her arms above her head and demonstrated limited range of motion in both arms.  (*Id.*).  She also demonstrated limited range of motion in her lumbar spine with pain and spasming in her lower back.  (*Id.*).  The straight leg test was positive bilaterally in both the seated and supine positions.  (*Id.*).  Plaintiff demonstrated full strength and sensation in her arms and legs and full range of motion in her hips, knees, and ankles.  (*Id.*).

Dantoni opined that plaintiff had moderate to marked limitations for prolonged sitting, prolonged standing, walking, climbing stairs, bending, lifting, carrying, kneeling, and reaching.  (*Id.*).  Specifically, based upon plaintiff's "severe lower back pain on exam," Dantoni

opined that plaintiff could occasionally lift and carry up to 10 pounds and that she could only sit, stand, or walk for 15 minutes at a time.  (*Id.*).  According to Dantoni, plaintiff could sit for a total of two hours and stand and walk for a total of one hour during an eight-hour workday.  (*Id.*).  During the remainder of the day, plaintiff would have to lie down "due to severe back pain." (*Id.*).  Dantoni also opined that due to plaintiff's difficulty raising her arms over her head, decreased range of motion, and her "severe back pain," plaintiff could never reach (in any direction), push, pull, operate foot controls, balance, stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders or scaffolds.  (*Id.*).  According to Dantoni, plaintiff could frequently engage in handling and fingering activities.  (*Id.*).  Finally, Dantoni opined that plaintiff could tolerate moderate noise, occasionally operate a motor vehicle, and occasionally be exposed to humidity or wetness, but should avoid workplace hazards, pulmonary irritants, temperature extremes and vibrations, due to "severe back [and] neck pain."  (*Id.*).

The ALJ determined that Dantoni's opinion was entitled to little weight, concluding her physical examination findings were inconsistent with the longitudinal evidence of record, particularly Huckell's physical examinations findings, which consistently demonstrated full range of motion, including "full cervical range of motion for the last three years with full range of motion in all upper extremities," as well as negative straight leg raise testing. (Tr. 1138-39).  In addition, the ALJ found that Dantoni's assessment appeared to rely upon plaintiff's subjective reporting that she suffered from extreme impairments.  (*Id.*).

Plaintiff maintains that the ALJ improperly weighed the opinions of Huckell and Dantoni – the two physicians who provided functional opinions concerning plaintiff's physical limitations.  (Docket ## 6-1 at 13-19; 8 at 1-4).  Plaintiff contends that the ALJ failed to provide good reasons for assigning more weight to Huckell's January 2020 opinion than to his June 26,

2019 opinion, which assessed more restrictive limitations.  (Docket # 6-1 at 13).  In addition,

plaintiff maintains that the ALJ erred by failing to give greater weight to the opinion authored by

Dantoni, the consultative examiner.  (*Id.* at 15-19).  Finally, plaintiff maintains that Huckell's

January 2020 opinion does not support the ALJ's conclusion that plaintiff could perform the

standing and walking requirements of light work, rendering the RFC unsupported by substantial

evidence.  (*Id.* at 13-15).

        An ALJ should consider "all medical opinions received regarding the claimant."

*See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R.

§ 404.1527(d)[3]).  Generally, a treating physician's opinion is entitled to "controlling weight"

when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R.

§§ 404.1527(c)(2), 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)

("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment

is given controlling weight so long as it is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the

case record") (internal quotations and brackets omitted).  Thus, "[t]he opinion of a treating

physician is generally given greater weight than that of a consulting physician[] because the

treating physician has observed the patient over a longer period of time and is able to give a more

detailed picture of the claimant's medical history."  *Salisbury v. Astrue*, 2008 WL 5110992, *4

(W.D.N.Y. 2008).

        "An ALJ who refuses to accord controlling weight to the medical opinion of a

treating physician must consider various 'factors' to determine how much weight to give the

---

[3]  This regulation applies to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §§ 404.1520c, 416.920c apply.

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly

consider the "*Burgess* factors":

> (1)     the frequency of examination and length, nature, and extent
>          of the treatment relationship,
>
> (2)     the amount of medical evidence supporting the opinion,
>
> (3)     the consistency of the opinion with the record as a whole,
>
> (4)     whether the opinion is from a specialist, and
>
> (5)     whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also*

*Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is

entitled to controlling weight[;] . . . [s]econd, if the ALJ decides the opinion is not entitled to

controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must

'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). The same factors should be used

to determine the weight to give to a consultative physician's opinion. *Tomasello v. Astrue*, 2011

WL 2516505, *3 (W.D.N.Y. 2011).

        Here, the ALJ accorded controlling weight to Huckell's January 2020 opinion, in

accordance with the treating physician rule. (Tr. 1137). Plaintiff maintains that the ALJ failed to

provide a good reason for assigning controlling weight to Huckell's January 2020 opinion

instead of his June 26, 2019 opinion. (Docket # 6-1 at 13). As noted above, the ALJ found

Huckell's June 26, 2019 opinion to be inconsistent with the opinions provided by Huckell on

June 10, 2019 and January 8, 2020. (Tr. 1138). Discounting the June 26, 2019 opinion due to

this inconsistency was error, according to plaintiff, because the ALJ improperly attributed the

June 10, 2019 opinion to Huckell, when it was actually authored by Nurse Practitioner Collins.

(Docket # 6-1 at 13). Plaintiff's contention is belied by the medical records, which clearly

demonstrate that the treatment note in which the opinion was contained was co-signed by both

Collins and Huckell.  *See King v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 277, 282 (W.D.N.Y.

2018) ("medical source statements cosigned by a treating physician should be evaluated as

having been the treating physician's opinion").  Indeed, each of the treatment notes containing

the relevant opinion evidence – June 10, 2019; June 26, 2019; and, January 8, 2020 – were

co-signed by Huckell and either Collins (the June 2019 notes) or physician's assistant David

Joslyn, Pa-C (the January 2020 notes).  (Tr. 1111, 1121, 1394).  Moreover, the ALJ adequately

discussed why he assigned greater weight to Huckell's January 2020 opinion, explaining that the

June 26, 2019 opinion was inconsistent with Huckell's previous and subsequent opinions and

that the January 2020 opinion was more consistent with Huckell's physical examination findings,

which remained largely unchanged between September 2017 and the present.  (Tr. 1137-38).

      Plaintiff also maintains that Huckell's January 2020 opinion does not provide

substantial evidence for the ALJ's conclusion that she could perform the standing and walking

requirements of light work.  (Docket # 6-1 at 13-15).  According to plaintiff, Huckell's January

2020 opinion does not explicitly address her ability to stand or walk, and thus it should not be

interpreted to support the conclusion that she had no limitations in her ability to stand or walk.

(*Id.*).  Moreover, plaintiff maintains that the reasonable inference from Huckell's opinion that she

should be permitted to "stand up and take a short break after 60 minutes" is that Huckell was

limiting her to work activity primarily performed in a seated position.  (*Id.*).

      As an initial matter, I disagree that Huckell's opinion should be interpreted to

suggest that plaintiff was limited to work activity primarily performed when seated.  To the

contrary, Huckell repeatedly opined that plaintiff was capable of engaging in "light duty" work.

(Tr. 1101, 1110, 1121, 1393, 1401, 1425).  Moreover, despite plaintiff's ongoing complaints of

lumbar back pain, which she claimed was aggravated by increased physical exertion such as

prolonged standing and sitting (Tr. 965, 970), the only restrictions Huckell placed on her return

to work were to avoid lifting more than approximately 20 pounds and engaging in repetitive

twisting, bending, and rotating of her lumbar spine, and to stand after sitting for one hour

(Tr. 1393).  Accordingly, I disagree that the opinion may reasonably be interpreted as limiting

plaintiff to work activity performed primarily in a seated position.

    Further, although the "[s]ilence of a . . . physician on an issue pertinent to a

claimant's RFC may, in certain circumstances, not be an appropriate basis on which to resolve

that issue to the claimant's detriment,"[4] *see Harold R. D. v. Comm'r of Soc. Sec.*, 2021 WL

9583307, *3 (W.D.N.Y. 2021), those circumstances are not present here.  Review of Huckell's

treatment notes demonstrate that he evaluated her ability to return to employment based upon her

subjective complaints of ongoing back pain, her reported activities, repeated imaging of her

spine, and his multiple physical examinations.  Indeed, as early as September 2017, plaintiff

requested that Huckell permit her to return to work without restrictions, and the treatment notes

indicate that both plaintiff and Huckell were considering her ability to return to her work as a

CMA.  (Tr. 954, 994).  Significantly, the treatment notes demonstrate that Huckell was fully

aware of the physical requirements of plaintiff's previous employment, including that the job

---

[4] Whether to interpret a physician's silence on a particular limitation as evidence that a claimant does not
have such limitation is a proposition for which there is considerable dispute.  *Compare Hernandez v. Comm'r of
Soc. Sec.*, 2020 WL 13557912, *7 (W.D.N.Y. 2020) ("[p]laintiff erroneously argues that because [the consulting
opinion] did not specifically list any limitations as to standing or walking, these limitations were not considered by
the examiner[;] [t]his argument makes no sense[;] [w]hen a consultative examiner is requested to outline all
functional limitations found and does not list certain limitations, then it necessarily follows that limitations not listed
were not found"); *VanNote v. Comm'r of Soc. Sec.*, 2019 WL 5865452, *7 (W.D.N.Y. 2019) ("[t]his [c]ourt has held
that where a medical source was asked to opine about limitations, and only endorsed limitations in some areas, it is
reasonable to interpret the report as an opinion that the limitations were only in those areas that were endorsed")
*with Delshawn J. v. Comm'r of Soc. Sec.*, 2024 WL 1069882, *4 (W.D.N.Y. 2024) ("[a] medical opinion's silence
on a particular limitation is not to be taken as any indication that the claimant has no limitation – especially where
the opinion details other limitations").

required her to engage in patient care that involved standing, bending, lifting and twisting.
(Tr. 924).

Despite his knowledge regarding the physical requirements of this position,
including the standing requirements, Huckell did not impose any standing or walking restrictions
on plaintiff's ability to return to work.  On this record, I find that Huckell's opinion supports the
physical limitations assessed by the ALJ.  *See Harold R. D. v. Comm'r of Soc. Sec.*, 2021 WL
9583307 at *4 ("[b]ased on [the physician's objective findings], I do not conclude that [the
physician's] report was silent about plaintiff's sitting and standing limitations, especially where
he included other related limitations on [plaintiff's] capacity to walk, bend and kneel");
*Kenneth S. v. Comm'r of Soc. Sec.*, 2019 WL 1332317, *12 (N.D.N.Y. 2019) (physician's
opinion supported RFC assessment despite not specifically assessing a sitting limitation; "[the
physician] was not 'silent' about [p]laintiff's limitations[;] . . . [she] specifically mentioned her
assessment of [p]laintiff's functional limitations, referenced the x-rays of [p]laintiff's right hip
and lumbosacral spine showing joint space narrowing and degenerative changes, respectively,
and never mentioned any limitation on his ability to sit" ).

Plaintiff also maintains that the ALJ erred by discounting the opinion authored by
Dantoni, the one-time state consultative examining physician.  (Docket ## 6-1 at 15-19; 8 at 3-4).
Plaintiff contends that Dantoni's opinion is consistent with the longitudinal evidence of record
and that the limitations she assessed are supported by her physical examination of plaintiff.  (*Id.*).

Under the regulations applicable to plaintiff's claim, a consultative examiner's
opinion is not entitled to any particular weight, and an ALJ is free to discount those portions of
the opinion that are not supported by the other evidence of record.  *See Dukes v. Comm'r of Soc.
Sec.*, 2020 WL 5651610, *5 (W.D.N.Y. 2020) ("[the doctors] were both consultative examiners

17

and their opinions were thus not entitled to any particular weight; instead, the ALJ was 'free to disregard identified limitations ... not supported by the evidence of record'") (quoting *Torbicki v. Berryhill*, 2018 WL 3751290, *5 (W.D.N.Y. 2018)).  In this case, the ALJ considered Dantoni's opinion, but found that it was entitled to little weight because it was inconsistent with plaintiff's treatment notes and Huckell's opinion that she could engage in light duty with work certain modifications.  (Tr. 1138).  According to the ALJ, upon examination of plaintiff, Dantoni noted several abnormal physical findings that were wholly inconsistent with the largely normal physical examination findings contained in plaintiff's treatment notes.  (Tr. 1138-39).  The ALJ also reasoned that the limitations assessed by Dantoni were inconsistent with plaintiff's reported activities of daily living and appeared to rely on plaintiff's own subjective complaints.  (*Id.*).

   I find that the ALJ properly considered the inconsistency between the abnormal physical findings in Dantoni's opinion and the largely normal physical examination findings contained in plaintiff's longitudinal medical records and that he did not err in his determination that Dantoni's opinion was entitled to less weight.  *See Ryan W. v. Comm'r of Soc. Sec.*, 2022 WL 813934, *3 (N.D.N.Y. 2022) ("[t]he ALJ has broad discretion to review the opinions of record and weigh them accordingly") (internal quotations omitted); *Jennifer K. v. Saul*, 2021 WL 859377, *5 (W.D.N.Y. 2021) ("the ALJ is permitted to choose between conflicting opinions) (citing *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[the courts] will defer to the Commissioner's resolution of conflicting evidence")).  Accordingly, remand is not warranted on this ground.

### 2. <u>Duty to Develop the Record</u>

   I turn next to plaintiff's contention that the ALJ erred by not further developing the record by obtaining a "retrospective opinion" regarding plaintiff's functional limitations prior

to June 2019.[5]  (Docket ## 6-1 at 19-24; 8 at 4-6).  Plaintiff maintains that the record is devoid of

any medical opinion assessing her physical functioning between her August 2016 alleged onset

date and Huckell's June 10, 2019 opinion.  Thus, plaintiff argues, given her "remote alleged

onset date," the ALJ erred by failing to fully develop the factual record by obtaining a medical

opinion assessing her physical capabilities during that time period.  (Docket # 8 at 6).  I disagree.

       "It is well established in the Second Circuit that an ALJ is under an obligation to

develop the administrative record fully, to ensure that there are no inconsistencies in the record

that require further inquiry, and to obtain the reports of treating physicians and elicit the

appropriate testimony during the proceeding."  *Martello v. Astrue*, 2013 WL 1337311, *3

(W.D.N.Y. 2013).  Given the non-adversarial nature of a Social Security hearing, "[t]he duty of

the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the

arguments both for and against the granting of benefits.'"  *Vincent v. Comm'r of Soc. Sec.*, 651

F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386).  The ALJ's duty to develop the

record is not, however, without limits; specifically, "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a complete medical history, the ALJ

is under no obligation to seek additional information in advance of rejecting a benefits claim."

*Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotations omitted).

       According to the ALJ, the treatment records demonstrate that plaintiff improved

following her lumbar fusion surgery in November 2016, and by September 2017 physical

examinations of plaintiff contained in Huckell's treatment notes demonstrated consistently

---

[5]  In accordance with the District Court Decision, during proceedings on remand, the ALJ developed the
record by obtaining an opinion of plaintiff's physical functioning from Dantoni, a consultative examining orthopedic
physician.  (Tr. 1133, 1460-70).  In addition, additional treatment records from plaintiff's treating providers were
gathered and considered, including the records containing Huckell's January 2020 opinion.  (Tr. 1435-41).  In his
decision, the ALJ explained that efforts were made to obtain additional evidence from plaintiff's treating orthopedist
Michael Calabrese, MD, but that those efforts were not successful.  (Tr. 1133).

normal findings with the exception of some range of motion limitations in her lumbar spine. (Tr. 1137-39). Those physical examination findings remained virtually unchanged between September 2017 and April 2021, suggesting that plaintiff's physical functional capacity did not vary significantly during that time period. (*Id.*; *see also* Tr. 924-37, 954-63, 1096-1102, 1419-58). The ALJ acknowledged that plaintiff demonstrated more significant physical findings upon examination prior to September 2017, reasoning that plaintiff was more limited in the immediate aftermath of her November 2016 surgery, although he determined that such limitations were not "durational." (Tr. 1137). Based upon his review of the longitudinal record, the ALJ concluded that the limitations assessed by Huckell in his January 2020 opinion "appear[] to be the most appropriate statement of the claimant's functional limitations." (*Id.*).

The record in this case contains approximately six years of plaintiff's medical records, including those predating her alleged onset date. Moreover, the record contains several opinions from plaintiff's treating providers, as well as an opinion from a consultative physician, assessing plaintiff's physical functioning during the relevant period. Although none of the opinions explicitly assess plaintiff's physical functioning prior to June 2019, I find that the ALJ adequately explained his determination that Huckell's assessment of plaintiff's physical functioning "cover[ed] the majority of the period in issue." (*Id.*). Accordingly, I find that the record in this case was sufficiently developed to permit the ALJ to formulate plaintiff's physical RFC and that the ALJ's determination is supported by substantial evidence.

## B. **Plaintiff's Remaining Contentions**

I have considered plaintiff's remaining contentions and find them to be without merit. Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir.

2012) (summary order), if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not necessarily err by formulating an RFC without mental limitations or restrictions. *See Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946, *3 (W.D.N.Y. 2022) ("even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC[;] . . . [w]here an ALJ's assessment of only mild limitations in mental functioning [is] supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC"). Contrary to plaintiff's contention, the ALJ's decision demonstrates that he considered plaintiff's mental impairments throughout the sequential evaluation but concluded that they did not cause functional limitations – a conclusion I find to be supported by substantial evidence. (Tr. 1139). Finally, I conclude that the ALJ applied the proper legal standards in analyzing plaintiff's subjective complaints, and substantial evidence supports the ALJ's determination that, for the reasons he stated, plaintiff's complaints were not consistent with the record evidence. *See Luther v. Colvin*, 2013 WL 3816540, *7 (W.D.N.Y. 2013) (ALJ properly assessed subjective complaints where she "reviewed all of [p]laintiff's subjective complaints . . . [and] properly considered [p]laintiff's activities of daily living, inconsistent testimony and how her symptoms affected her attempts at maintaining a job").

## **CONCLUSION**

Upon review of the record, this Court finds that the Commissioner's denial of DIB/SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED**. Plaintiff's motion for

judgment on the pleadings **(Docket # 6)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
March 22, 2024